[Crim. No. 1156.   Fourth Dist.   Aug. 8, 1957.]

THE PEOPLE, Respondent, v. FRANK HONESTO, Appellant.

Frank Honesto, in pro. per., and Joseph V. Mazziotta, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

BARNARD, P. J.—The defendant was charged with the murder of his father on July 18, 1956, and with a prior conviction of a felony. He pleaded not guilty and admitted the prior conviction. A jury found him guilty of voluntary manslaughter, an included lesser offense. His motion for a new trial was denied, and the court reduced the verdict to involuntary manslaughter. He has appealed from the judgment.

The defendant was represented at the trial by two able and experienced attorneys, and one of them was appointed by this court to represent him on this appeal. This counsel has filed a report stating that after a thorough examination of the record he has been unable to find any sufficient legal basis for the appeal; that the record discloses that the defendant received a full and fair trial, and that all of his legal rights were amply protected both by his counsel and at the hands of the judge who tried the case; and that he is convinced from the facts of the case and the law applicable thereto that no meritorious ground for an appeal exists.

The report also stated that the only points which the defendant has indicated a desire to have raised are that the court allowed the prosecution to introduce evidence that on previous occasions the appellant, when intoxicated, had beaten his wife and his father; that a defense witness, Dr. Small, had testified that it was "improbable that the deceased came to his death by an injury resulting from being struck on the head by a glass water pitcher"; and that the jury was "influenced and infested by prejudicial and improper examination by the assistant district attorney."

The attorney general has filed a brief with a full review of the evidence, and a discussion of the points suggested by the appellant. We are in accord with the conclusion reached by appointed counsel and the attorney general that no reversible error appears in the record.

The trial lasted nine days and the reporter's transcript contains 672 pages. While a large part of the evidence was circumstantial, the evidence is amply sufficient to support the verdict. The deceased lived alone and, after

the death of his wife, had been drinking heavily. A brother of the defendant stopped at the father's house on the morning of July 18 and saw his father in bed, either under the influence of liquor or only half awake. The defendant and another man were there at the time, and this brother told the defendant that he did not want him bringing any of his friends into the house as he did not want them to give the father liquor. He then left for work. About noon on that day the defendant and three companions returned to the father's house, and were drinking wine on the front porch. Sometime later, the appellant went into the house saying he was "going to wake that lazy son-of-a-bitch and get the $200 he owed him." The appellant went into his father's room and the others on the porch heard him tell his father to get up, and heard noises which sounded like slaps. The appellant returned to the porch, took another drink of wine, and reentered his father's room whereupon he was heard to curse his father in an angry voice, there were sounds of a mattress squeaking, and through the open door the appellant could be seen moving his arm back and forth like he was hitting something on the bed. The appellant then went into the kitchen and came back with a water pitcher in his hand, and reentered the father's room. When he came out of the room one of the men noticed a bruise which looked like blood on the appellant's knuckle, and another witness noticed blood on his right hand. When the appellant entered the house again one of the men looked into the father's room and saw that one of the pillows on the bed had blood on it. The appellant again reentered the father's room with the glass pitcher in his hand. While he was in that room one of the witnesses testified that "I saw him lift up the pitcher and let it go about twice, and I left." Shortly thereafter, the appellant and the other two men left the house. The brother who had been there that morning returned about 4:40 p. m. and found his father in the same bed with a cut on his wrist and blood about his head. He did not appear to be breathing, and this brother called the police.

Officers who arrived at about 5 p. m. found blood on the father's person, on the sheet and pillow, on the rug and on other articles in the room. A doctor who examined the body of the deceased found a skull fracture extending from behind the right ear over the top of the skull to the left temple, and a second fracture extending from the middle of the first fracture to the base of the skull near the right ear. At the

junction of these fractures there was a triangular fragment of bone, roughly an inch and a half on each side, which was "depressed about one inch into the brain itself." This doctor testified that death was caused by "depressed skull fracture"; that consciousness would not exist beyond a matter of seconds after a head blow of this type; that it was possible that life would continue for an hour or an hour and a half; that a heavy blunt object could cause such a wound; and that in his opinion this glass water pitcher, with its "hard fluted areas," could have produced such a wound.

In his defense the appellant testified that he and a companion left his father's house at 9:15 that morning and that he did not return until after 5 o'clock that afternoon, at which time he was arrested. He also introduced evidence that his father had been treated for a possible skull fracture in June, 1944; that in May, 1954, he had his skull X-rayed for possible injuries but none were disclosed; and that in December, 1954, he was given emergency treatment at a hospital for abrasions of the head. None of these previous injuries could possibly explain the condition found by the doctor on the day of death.

While Dr. Small, called by the appellant, expressed his opinion that it was improbable that the deceased came to his death as a result of being struck by this water pitcher, he also testified that in his opinion it was possible that this pitcher produced the injury causing death. Any suggested conflict in the evidence merely presented a question for the jury.

The other points on which appellant relies are without merit. After the appellant had testified that the police had threatened him with physical violence he was asked whether, while he was a prisoner in any institution, anyone had ever told him that if he was ever charged with anything he should claim that the police had mistreated him. Appellant's attorney objected to the question and asked that the jury be instructed to disregard it. The objection was sustained, but no instruction to disregard it was given. After he had testified that he got along well with his former wife and that the only reason she left him was because he had gotten drunk, he was asked on cross-examination if it was not a fact that on several occasions when he got drunk he had beaten his wife. An objection to the question was made and sustained, but no request was made to instruct the jury to disregard it. In cross-examination with respect to another part of his testi-

mony he was asked if it was not a fact that previously, within the past year, he had beaten his father. No objection was made, and the appellant answered "No."

The evidence was amply sufficient to support the verdict and judgment, and it could not reasonably be thought that any error which may appear could have affected the result.

The judgment is affirmed.

Mussell, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 3, 1957.